**No. 2013-1596**
**(Reexamination No. 95/001,070)**

IN THE

# United States Court of Appeals

## FOR THE FEDERAL CIRCUIT

CROSS ATLANTIC CAPITAL PARTNERS, INC.,

*Appellant,*

v.

FACEBOOK, INC.,

*Appellee.*

Appeal from the United States Patent and Trademark Office,
Patent Trial and Appeal Board in Reexamination No. 95/001,070.

### REPLY BRIEF FOR APPELLANT
### CROSS ATLANTIC CAPITAL PARTNERS, INC.

David B. Walker
*Counsel of Record*
BARCELÓ, HARRISON & WALKER,
    LLP
1629 K Street, N.W., Suite 300
Washington, D.C. 20006
(202) 567-6778

Frederick A. Tecce
PANITCH SCHWARZE BELISARIO &
    NADEL LLP
One Commerce Square
2005 Market Street, Suite 2200
Philadelphia, PA 19103
(215) 965-1398

James H. Wallace, Jr.
Gregory R. Lyons
Kevin P. Anderson
WILEY REIN LLP
1776 K Street, N.W.
Washington, D.C. 20006
(202) 719-7356

*Counsel for Appellant Cross Atlantic Capital Partners, Inc.*

# TABLE OF CONTENTS

Page

SUMMARY OF ARGUMENT ..................................................................................... 1

ARGUMENT ............................................................................................................... 5

I.    The Board's Obviousness Determinations Are Legally Erroneous Because There Is No Rational Underpinning To Combine The Asserted References ....5

    A.    The Board Committed Legal Error By Refusing To Consider XACP's Timely Arguments Against The Combination of Yahoo, Tatham, And Liu…………………………………………………………………...6

    B.    The Board Committed Legal Error By Failing To Provide Any Rational Underpinning To Combine Yahoo, Tatham And Liu Or Tatham, Herz And Liu. ........................................................................................... 7

    C.    The Board Erred By Providing Insufficient Rational Underpinning To Combine Miller And Liu. ..................................................................... 10

    D.    Facebook's Belated Attempts To Substitute Its Own Rationale For That Actually Relied On By The Board Are Improper And Should Be Rejected ............................................................................................... 12

II.   The Board's Invalidity Decision Is Premised On Legally Erroneous Claim Constructions And Under A Proper Construction, All Rejections Should Be Reversed ............................................................................................................14

    A.    Contrary To Facebook's Arguments, The Construction Of The Terms "Community" And The Transmitting/ Transmission Limitations Is Not Irrelevant. ........................................................................................... 14

    B.    The Proper Construction Of Community Is "*Information And The At Least One Application Object* That Was Selected By The User Relating To A Specific Transaction, Interaction, And/Or An Expression Of Interest *That May Be Accessed And/Or Interacted With* By A Plurality Of Users With Common Interests *Through A Private Or Public Communications Network*, Such As Web Pages Or An Internet Site.". 15

III.  The Board Erred In Finding That Yahoo, Miller And Liu Constitute Prior Art. ........................................................................................................16

A.    The Board Erred By Refusing To Consider XACP's Timely Arguments For An Earlier Priority Date. ................................................. 17

    1.    Facebook Misstates The Standard Of Review ............................ 17

    2.    The Board's Refusal To Consider XACP's Timely Priority Arguments Is Contrary To Its Own Binding Precedent, Which Facebook Simply Ignores. ........................................................... 19

    3.    The Board's Finding That XACP's Priority Arguments Were Untimely Is Not Supported By Substantial Evidence, Because XACP Could Not Have Earlier Raised Those Challenges. ......... 19

B.    The Board's Finding That Yahoo And Miller Qualify As Prior Art Is Not Supported By Substantial Evidence Because XACP Showed Entitlement To The Filing Date Of The '988 Application For The Earlier Claims. ................................................................................. 22

C.    The Board's Finding That Liu Qualifies As Prior Art Is Not Supported By Substantial Evidence Because XACP Demonstrated Earlier Conception And Diligence To Reduction To Practice. ........................ 24

    1.    XACP Showed That The Board's Finding That XACP Did Not Demonstrate Conception Prior To Liu's Filing Date Is Not Supported By Substantial Evidence. ........................................... 24

    2.    XACP Showed That The Board Erred In Finding That XACP Did Not Demonstrate Diligence From Conception To Constructive Reduction To Practice ................................................................. 25

IV.    Facebook's Brief Does Not Overcome That There Is No Substantial Evidence To Support The Board's Finding That Any Of Asserted Combinations Or Anticipation References Teach Or Suggest The Transmitting/Transmission Limitations .................................................................................................. 28

A.    Facebook's Arguments That The Board's Obviousness Combinations Teach The Transmitting/Transmission Limitations Rely On The Board's Improper Claim Construction And Are Not Supported By Substantial Evidence .............................................................................................. 28

B.   Facebook's Arguments Regarding Anticipation By Roseman And Sarin Rely On The Board's Faulty Claim Construction, And Highlight That The Board's Anticipation Rejections Are Not Supported By Substantial Evidence ................................................................................................ 31

CONCLUSION ............................................................................................. 34

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Applied Medical Resources Corp. v. U.S. Surgical Corp.*,
    147 F.3d 1374 (Fed. Cir. 1998) ........................................................... 33

*Brown v. Barbacid*,
    276 F.3d 1327 (Fed. Cir. 2002) .......................................................... 16

*Fitzgerald v. Arbib*,
    268 F.2d 763 (C.C.P.A. 1959) ............................................................ 27

*Ex parte Borden*,
    93 U.S.P.Q.2d 1473 (BPAI 2010) ...................................................... 18

*Ex parte Frye*,
    94 U.S.P.Q.2d 1072 (BPAI 2010) ...................................................... 19

*In re Applied Materials, Inc.*,
    692 F.3d 1289 (Fed. Cir. 2012) ....................................8, 9, 11, 32, 33

*In re Giannelli*,
    109 U.S.P.Q.2d 1333 (Fed. Cir. 2014) ..................................... 7, 10, 11

*In re Klein*,
    647 F.3d 1343 (Fed. Cir. 2011) ............................................................ 6

*In re Mulder*,
    716 F.2d 1542 (Fed. Cir. 1983) .................................................... 17, 27

*Muniauction, Inc. v. Thomson Corp.*,
    532 F.3d 1318 (Fed. Cir. 2008) ............................................... 9, 10, 11

*Sec. & Exch. Comm'n v. Chenery Corp.*,
    332 U.S. 194 (1947) ............................................................................. 9

*Singh v. Brake*,
    317 F.3d 1334 (Fed. Cir. 2003) .................................................... 17, 18

# SUMMARY OF ARGUMENT

Facebook's defense of the Board's rulings misstates the standard of review and cannot remedy the Board's legal errors and lack of substantial evidence to support its factual findings. Indeed, there are multiple independent bases for this Court to reverse the Board's decision.

- First, the Board failed to provide sufficient rational underpinning for any of the three combinations relied upon for the obviousness rejections. This legal error alone supports reversal of the Board's rejection of claims 76-146.

- Second, the Board committed legal error in failing to adopt the broadest reasonable construction consistent with the intrinsic record for "community" and "transmitting the created community," and then relied on its erroneous construction to reject all pending claims. Under a proper claim construction, all of the Board's rejections of claims 1-32 and 76-146 should be reversed.

- Third, the Board erroneously concluded that the asserted references (Yahoo, Miller and Liu) qualify as prior art. As an initial matter, the Board's rejection of XACP's priority arguments as untimely cannot stand because all of the rejections relied upon at least one new reference. Additionally, the Board's priority conclusions are erroneous and Facebook's arguments to the contrary rely upon an improper claim construction.

The Board committed legal error by failing to provide sufficient rational underpinning for any of the three combinations relied upon for the obviousness rejections. The Board failed to provide *any* rationale whatsoever—a fact that Facebook has failed to refute—for the combinations of Yahoo, Tatham and Liu, and Tatham, Herz and Liu. The Board

erroneously rejected XACP's arguments regarding the combination of Yahoo, Tatham and Liu as untimely because XACP had not previously argued the combinability of Yahoo and Tatham alone. That combination, however, is not the basis of the Board's rejection, and XACP timely argued that there was no basis to combine *all three references* in its first permitted response following Facebook's newly proposed rejection. With respect to Miller and Liu, the Board's rationale is conclusory, and neglected that Miller actually teaches away from Liu, which Facebook also entirely ignores.

Recognizing the Board's errors, Facebook attempts to reargue rationales not adopted by the Board and to provide new rationales. However, this Court cannot substitute Facebook's reasoning, nor its own rationale, for the Board's. Because the above obviousness rejections are the only rejections applied to claims 76-146, this error alone compels reversal and the Court need not consider any of the remaining arguments to reverse the Board's decision as to those claims.

As to all pending claims, the Board committed a second legal error by failing to adopt a broadest reasonable construction for "community" and "transmitting the created community" consistent with the '629 patent specification, and then relying on its erroneous construction to reject all pending claims. The Board incorrectly found "that a 'community' includes

2

any group of persons or entities in common," which is nonsensical in connection with art relating to transfer of a created "community" over a communications network. Such a construction, is inconsistent with, and not supported by, the intrinsic record, which confirms that a "community" comprises information and application objects. Therefore, this Court should construe "community" to mean "information and the at least one application object that was selected by the user relating to a specific transaction, interaction, and/or an expression of interest that may be accessed and/or interacted with by a plurality of users with common interests through a private or public communications network, such as web pages or an Internet site," as did the district court in the parallel litigation. Under a proper claim construction, all of the Board's rejections should be reversed.

 The Board also erred in finding that Yahoo, Miller and Liu qualify as prior art. The Board erroneously found that XACP's arguments for an earlier priority date for the '629 patent were untimely, even though the pertinent obviousness rejections were first proposed by Facebook after XACP's Request to Reopen Prosecution. Each of those rejections included at least one new reference. Liu was entirely new; Miller had never been entered by the Examiner in a prior art rejection; and Yahoo included material which had not been previously submitted or relied upon, as

3

Facebook admits.  Contrary to Facebook's arguments, the PTO rules did not permit XACP an opportunity to raise its priority challenges earlier, and the Board erred in rejecting them as untimely.

Moreover, Facebook's arguments cannot refute that, contrary to the Board's findings, none of Yahoo, Miller, or Liu qualify as prior art at least as to claims 1-4, 9-12, 17-20, 25-28, 76, 78-80, 82, 83, 89, 92, 94, 96, 97, 99, 101, 103-105, 107, 109-111, 113, 114, 116, 118, 120, 122, 123, 125, 127, 128, 130 and 132-136 (the "Earlier Claims").  The decisive declaration submitted by inventor James Harvey during reexamination (the "Harvey Declaration") and its supporting exhibits demonstrate that the '629 patent is entitled to the earlier filing date of U.S. Patent Application Number 09/264,988 (the "'988 Application") (*i.e.*, September 15, 1998), at least as to the Earlier Claims.  Both Yahoo and Miller have later effective dates, and therefore do not qualify as prior art as to those claims.  With respect to Liu, the Harvey Declaration includes the express sworn statements of each of the inventors of the Earlier Claims and supporting evidence demonstrating: (1) the invention was conceived prior to the May 22, 1998 effective date of Liu; and (2) ample diligence from the effective date of Liu until the constructive reduction to practice with the filing of the '988 Application.  Liu therefore also does not qualify as prior art as to the Earlier Claims.  Because at least

4

one of the references relied upon in each of the above three obviousness rejections does not qualify as prior art, the Board's priority errors provide a third independent basis to reverse all three obviousness rejections as to the Earlier Claims.

Finally, the Board committed error in finding that each of the asserted combinations of references and the allegedly anticipating references, Roseman and Sarin, teaches or suggests "transmitting" or "receiving a transmission of" "the created community, including the at least one application object, based in part on the at least one communications address" ("the Transmitting/Transmission limitations"). Under the proper construction, none of the asserted combinations has been, or can be, shown to teach or suggest the Transmitting/Transmission limitations—providing another independent basis to reverse all of the rejections.

## ARGUMENT

## I. The Board's Obviousness Determinations Are Legally Erroneous Because There Is No Rational Underpinning To Combine The Asserted References.

Facebook argues that the obviousness determinations are supported by substantial evidence. (Facebook Br. at 39-51). However, the Board's ultimate conclusion of obviousness, including its rationale to combine the references, is reviewed *de novo*, and only the underlying factual

determinations are reviewed on a substantial evidence standard. *In re Klein*, 647 F.3d 1343, 1347 (Fed. Cir. 2011). The lack of rational underpinning for any of the obviousness determinations alone compels reversal of the rejections of claims 76-146.

### A. The Board Committed Legal Error By Refusing To Consider XACP's Timely Arguments Against The Combination of Yahoo, Tatham, And Liu.

The Board's refusal to consider XACP's arguments focuses on the combination of only two references, Tatham and Yahoo, and ignores that the rejection (and XACP's argument) is based on the combination of *all three references*, including Liu. (JA20). Indisputably, Liu is a new reference— introduced by Facebook only after XACP's Request to Reopen Prosecution. Therefore, the combination with Liu itself must be new. This alone confirms there is no substantial evidence to support the Board's erroneous waiver arguments, contrary to Facebook's arguments otherwise. XACP argued against the *new combination of all three*, not just Tatham and Yahoo alone as asserted by Board. (XACP Br. at 31-32). Moreover, although the Board found that XACP waived the argument because Yahoo and Tatham were previously cited (JA 20), Facebook admitted to the Board that the Yahoo reference that is the basis of the Board decision was also new. (JA3262) ("But the patent owner ignores the fact that, after the [original

6

2011] Board decision and in response to the patent owner's claim amendments and new claims, the Requester submitted additional pages from Hill (Yahoo!) that were not before the Board …"); (*see also* JA2987) (wherein Facebook argued that submission of the new portions of Yahoo was necessitated by XACP's amended and new claims).

Because XACP's arguments against the combination of Yahoo, Tatham and Liu were made at the first possible opportunity, the Board erred in failing to consider them.

### B.     The Board Committed Legal Error By Failing To Provide Any Rational Underpinning To Combine Yahoo, Tatham And Liu Or Tatham, Herz And Liu.

The Board provides no rational underpinning for either of the three-reference combinations, and instead, erroneously focuses on the combination of Tatham and Liu alone. (JA20).  The combination of Tatham and Liu alone is not the basis of any rejection.  Accordingly, the Board's legal error compels reversal of its obviousness rejections.

Contrary to this Court's recent decision in *In re Giannelli*, the Board provided no explanation for how or why one of ordinary skill in that art would have been motivated to combine either set of three references.  109 U.S.P.Q.2d 1333, 1337 (Fed. Cir. 2014) (holding that Examiner had not established a *prima facie* case of obviousness where rejection contained no

7

explanation why or how a person would modify the reference to arrive at the claimed invention).

Moreover, even as to the combination of Tatham and Liu, XACP has shown that the Board's rationale fails for those two references, much less either three-reference combination. (XACP Br. at 32-34). The Board's error in combining Tatham and Liu is highlighted by—and inconsistent with—its own prior decision. (JA2628-2645). The Board construed the term "transmitting a community" "to include sending or conveying," which indicates that the "community" is "conveyed from one point to another." (JA2633). Even under its own impermissibly broad construction, the Board agreed that "Tatham fails to disclose 'transmitting the community' as recited in claim 1." (*Id.*). The Board recognized that "Tatham explicitly discloses that 'there is no requirement that either the primary user 30 or secondary user 40 have access to specialized software applications in order to utilize the system' (col. 3, ll.43-45)." (JA2634). In contrast, the Board acknowledged that Liu "discloses downloading (or 'transmitting') code to a computer of an end user (col.2, ll.10-18)" (JA 19). As such, Tatham and Liu actually teach away from each other.

The Court cannot substitute its own rationale and must instead review the Board's actual reasoning. *In re Applied Materials, Inc.*, 692 F.3d 1289,

1294 (Fed. Cir. 2012) ("The Board's judgment must be reviewed on the grounds upon which the Board actually relied.") (citing *Sec. & Exch. Comm'n v. Chenery Corp.,* 332 U.S. 194, 196 (1947)).  "If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis.  To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency."  *Sec. & Exch. Comm'n,* 332 U.S. at 196.  Because the Board has provided no rational underpinning to combine either of the three-reference combinations, this Court should reverse the Board's rejections.

Facebook's reliance on *Applied Materials* and *Muniauction,* (Facebook Br. at 39-40), does not save the Board's failure to supply sufficient rational underpinning to support the asserted combination. Facebook selectively crops a quote from *Applied Materials* for the proposition that "[t]his Court has held that a Board decision, even if cursory and 'of less than ideal clarity,' will be upheld 'if the agency's path may reasonably be discerned.'"  (Facebook Br. at 39).  Tellingly, Facebook ignores that decision's critical holding that this Court "may *not* supply a reasoned basis for an agency's action that the agency itself has not given." *Applied Materials* at 1294 (emphasis added).

9

Facebook reliance on *Muniauction* is equally misplaced.  In *Muniauction*, the patentee's expert conceded that the prior art performed every limitation of the claims other than a web browser.  *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1324 (Fed. Cir. 2008).  Here, XACP has made no such concession.  Therefore, it is irrelevant that in *Muniauction* this Court allegedly "found that a patent claim was obvious where the difference between the prior art and the claimed invention was use of conventional web browser technology.  *Id*. at 1325-26." (Facebook Br. at 39).

### C.    The Board Erred By Providing Insufficient Rational Underpinning To Combine Miller And Liu.

The Board also erred in its rationale to combine Miller and Liu. (XACP Br. at 35-38).  The Board simply provided no explanation for "why or how a person having ordinary skill in the art" would have been motivated to combine the references.  *In re Giannelli*, 109 U.S.P.Q.2d at 1337.  The Board's sole rationale was impermissibly conclusory:

> We agree with [Facebook] that it would have been obvious to one of ordinary skill in the art to have combined Miller and Liu at least because both references disclose computer networks in which users collaborate and the combination of two such known similar systems would have resulted in no more than the predictable result of a computer network in which users collaborate and receive transmissions (a known operational characteristic of computer networks).

(JA19). Not only does the Board not provide a rational underpinning for the combination, but also it fails to address that Miller actually teaches away from Liu. (XACP Br. at 36-38). The Board's "rationale" also conflicts with this Court's holding that "[p]hysical capability alone does not render obvious that which is contraindicated." *In re Giannelli*, 109 U.S.P.Q.2d at 1337 (Fed. Cir. 2014).

None of the cases cited by Facebook, including *Applied Materials* and *Muniauction*, overcome these deficiencies in the Board's rationale or address that Miller teaches away from the modifications for which the Board relied upon Liu. Facebook's conclusory argument—without explanation or citation to the record—that the claimed limitations "simply incorporated well-known web or Internet features," (Facebook Br. at 37-38), cannot provide any evidence to overcome that Miller teaches away from Liu.

As such, the Board's asserted combination lacks any rational underpinning, and this Court cannot substitute its own rationale to uphold the Board's decision. *In re Applied Materials*, 692 F.3d at 1294. This alone dictates reversal of the Board's obviousness rejection in light of Miller and Liu.

### D.    Facebook's Belated Attempts To Substitute Its Own Rationale For That Actually Relied On By The Board Are Improper And Should Be Rejected

Facebook's belated attempt to argue again rationales not adopted by the Board and to provide new rationales should likewise be rejected. Facebook cannot substitute its own reasoning for the actual basis relied upon by the Board for the rejections.  Facebook erroneously argues that the "Board also expressly incorporated the reasoning provided by [Facebook], which cited additional evidence and rationale. (JA19 (citing JA3260-63.)" (Facebook Br. at 40).  In fact, the Board at most incorporated Facebook's unsupported arguments with respect to whether Tatham and Yahoo fail to disclose or suggest "transmitting the community," not as to why or how one of ordinary skill in the art would have combined any of the references to achieve any of the pending claims.  (JA19).

Facebook ignores the Board's failure to provide a rational underpinning to combine all three references, and instead, attempts to reduce the obviousness combinations to just adding Java capabilities to a webpage. (Facebook Br. at 37, 48).  This is nothing more than an improper effort to substitute a new rationale to bolster the Board's faulty reasoning, which must be rejected.

For the first time, Facebook now contends that XACP's arguments against the combinations of three references are unavailing because (1) the Board did not *need to* rely on Liu for the Transmitting/Transmission limitations, (Facebook Br. at 44), and (2) Herz is irrelevant to this appeal because it was relied upon only for the dependent claims. (*Id*. at 49). In fact, the record reveals that Facebook proposed, and the Board adopted, rejections relying on combinations of three references, not two. (JA18-20, JA2985, JA2987, JA3003-3025). Facebook cannot now rewrite the three-reference rejections in a belated attempt to correct the Board's legal error.

Nor can Facebook correct the Board's legal error by arguing that Liu provides an express teaching, suggestion or motivation to combine Tatham and Liu. (Facebook Br. at 50-51). Even if it were true, this was not the basis for the Board's decision and cannot save the Board's failure to provide any rationale to combine either of the three-reference combinations.

*    *    *    *    *

For the foregoing reasons, all of the obviousness rejections of claims 1-32 and 76-146 should be reversed. Because these are the only rejections applied to claims 76-146, the Court need not consider any of the additional arguments to reverse the rejections of claims 76-146.

II.    **The Board's Invalidity Decision Is Premised On Legally Erroneous Claim Constructions And Under A Proper Construction, All Rejections Should Be Reversed**

A.    **Contrary To Facebook's Arguments, The Construction Of The Terms "Community" And The Transmitting/ Transmission Limitations Is Not Irrelevant.**

Contrary to Facebook's argument that the construction of "community" and the Transmitting/Transmission limitations is irrelevant, Facebook advocated for,[1] and the Board adopted, a colloquial definition of "community" untethered to the intrinsic record, *i.e.*, "any group of persons or entities in common." (JA2640). In order to show that the construction of the above limitations is irrelevant, Facebook would have to show that the result would be the same regardless of the construction applied by the Board. (Section II.B below). Facebook has not, and cannot do so.

---

[1] For example, Facebook argues that "[t]he Hill, Tatham, and Miller prior art references disclose a web-based system in which a 'community' is created and then transmitted in the form of a web page to another user." Facebook Br. at 36.

14

**B.** **The Proper Construction Of Community Is "*Information And The At Least One Application Object* That Was Selected By The User Relating To A Specific Transaction, Interaction, And/Or An Expression Of Interest *That May Be Accessed And/Or Interacted With* By A Plurality Of Users With Common Interests *Through A Private Or Public Communications Network*, Such As Web Pages Or An Internet Site."**

Although Facebook attempts to avoid the proper claim construction with its "irrelevancy" arguments, XACP has shown that the Board's constructions of "community" and the Transmitting/Transmission limitations are inconsistent with the intrinsic record and the broadest reasonable construction. (XACP Br. at 42-46).

The Board impermissibly found "that a 'community' includes any group of persons or entities in common." (JA2640). Such a broad construction is inconsistent with the intrinsic record, which confirms that a "community" is comprised of information and application objects. (XACP Br. at 44). Indeed, contrary to the Board's construction, the intrinsic record describes a "community" as being created based on information and application objects, and being interacted with through the application objects downloaded to users. (JA46 5:14-20).

Incorporating the Board's construction of "community" into the Transmitting/Transmission limitations, which require transmitting the created community, results in a nonsensical construction of the

15

Transmitting/Transmission limitations where "any group of persons or entities in common" would be "conveyed from one point to another" across a communication network. On the contrary, in light of the intrinsic record, the limitation "transmitting the created community" plainly refers to *transmitting at least one application object of the created community*. This is precisely what the district court correctly concluded in the parallel litigation. (JA2532).

The Board relied on these legally erroneous claim constructions of both limitations to find that: (1) XACP was not entitled to the earlier priority of the '988 Application or the Harvey Declaration as to the Earlier Patent Claims (JA 18, citing Facebook's 1/17/12 Reply at 20-27); and (2) the prior art combinations and allegedly anticipating references taught the Transmitting/Transmission limitations (JA 18-19, citing JA3052-3058).

For the reasons discussed in XACP's Br. at 42-46, the district's court construction is consistent with a broadest reasonable construction and should be adopted by this Court.

### III. The Board Erred In Finding That Yahoo, Miller And Liu Constitute Prior Art.

"Priority and its issues of conception and reduction to practice are questions of law predicated on subsidiary factual findings." *Brown v.*

16

*Barbacid*, 276 F.3d 1327, 1332 (Fed. Cir. 2002) (citation omitted).

"Accordingly, this Court reviews without deference the Board's legal

conclusions on priority, conception, and reduction to practice, and reviews

for substantial evidence the Board's factual findings." *Id.* (citations

omitted).

### A.    The Board Erred By Refusing To Consider XACP's Timely Arguments For An Earlier Priority Date.

#### 1.    Facebook Misstates The Standard Of Review

Facebook cites interference cases that are inapposite to support an

abuse of discretion standard.  (Facebook Br. at 9, 13).  This Court has stated

that "[i]nterference rules do not necessarily apply; nothing is to be gained by

treating the situation as though it were something it is not.  Interferences

involve policy questions not present when antedating a reference." *See In re*

*Mulder*, 716 F.2d 1542, 1545 (Fed. Cir. 1983).

Facebook relies on *In re Singh* for the premise that this Court reviews

"the Board's application of its rules for an abuse of discretion."  (Facebook

Br. at 13 (citing *Singh v. Brake*, 317 F.3d 1334, 1339 (Fed. Cir. 2003)).

However, *Singh* referred to inapplicable interference rules.  *Singh*, 317 F.3d

at 1339 (The Board returned Singh's briefs "stating that Singh had failed to

comply with the requirements of 37 C.F.R. § 1.655(a) and (b) by presenting new arguments not raised in the original opposition.")).[2]

Facebook likewise selectively quotes a sentence from *Ex parte Borden* for the premise that "[i]t is in no way unfair to require applicants for patents, including Appellants to the Board, to present their best arguments in a timely fashion." (Facebook Br. at 16 (quoting *Ex parte Borden*, No. 2008-004312, 93 U.S.P.Q.2d 1473, 2010 Pat. App. LEXIS 1, at *13 (B.P.A.I. Jan. 7, 2010) (informative decision)). Facebook ignores *Borden*'s immediately preceding sentence: "[T]he Appellant can have a full and fair opportunity to raise additional issues and to provide additional evidence by way of refiling the application under an appropriate provision of *37 C.F.R. § 1.53*, or by seeking continued prosecution under § 1.114." *Borden*, 2010 Pat. App. LEXIS 1, at *13. In this *inter partes* reexamination, XACP would have no such opportunity to later raise the priority issues, and therefore *Borden* is inapposite.

Indeed, as discussed in Sections III.A.2-3 below, XACP presented the priority arguments at the first possible opportunity after Facebook proposed the three new obviousness rejections. The Board's finding that XACP's

---

[2] *Credle v. Bond*, cited in *Singh*, likewise refers to inapplicable interference rules. 25 F.3d 1566, 1572 n.14 (Fed. Cir. 1994).

priority arguments were untimely is not supported by any evidence, let alone substantial evidence, and is therefore erroneous.

>    **2.    The Board's Refusal To Consider XACP's Timely Priority Arguments Is Contrary To Its Own Binding Precedent, Which Facebook Simply Ignores.**

XACP demonstrated how the Board's own binding precedent in *Ex parte Frye* only permits the Board to "treat arguments appellant failed to make *for a given ground of rejection* as waived." *Ex parte Frye*, 94 U.S.P.Q.2d 1072, 1075 (BPAI 2010) (emphasis added); (*see also* XACP Br. at 18). Facebook completely ignores *Ex parte Frye*. (Facebook Br. 13-19). XACP established that each of Facebook's purported grounds of rejection was new, including *new* art and a *new* combination of references. (XACP Br. at 16-18). Because each of the Board's obviousness rejections was new, the Board violated its own binding precedent by refusing to consider XACP's responses to these new rejections.

>    **3.    The Board's Finding That XACP's Priority Arguments Were Untimely Is Not Supported By Substantial Evidence, Because XACP Could Not Have Earlier Raised Those Challenges.**

Facebook confuses the issue by seeking to characterize entitlement to the priority date as the same issue regardless of the identity of the asserted reference. (Facebook Br. at 16-19). Under Facebook's theory, if a patentee

does not challenge priority for *any* prior art in a reexamination, it cannot later argue for an earlier priority date for *any subsequent rejection*—even if the later rejection is premised on *different* prior art.  Notably, Facebook cites no case law or procedural rules to support this novel approach.  (*Id.*).  Facebook relies solely on its unsupported theory to bar XACP from arguing entitlement to the filing date of the earlier '988 Application with respect to: (1) Liu, which was entirely new; (2) Miller, which had never previously been the subject of a rejection adopted by the Examiner or the Board; and (3) the newly submitted pages of Yahoo relied upon by the Examiner and the Board.  (*Id.*).  Facebook's characterization of the timeliness issue would inappropriately bar any priority challenge to any reference for all time, simply because XACP did not raise a priority challenge to the originally submitted portions of Yahoo, which were not the basis of the Board's rejection.

XACP could not have earlier raised a priority challenge to Liu, Miller or the newly submitted sections of Yahoo.  (XACP Opening Br. at 16-18).  First, XACP swore behind Liu at the first opportunity after Facebook introduced the entirely new reference.  (*Id.*).  Similarly, the Harvey Declaration was timely at least because it was necessary to swear behind the newly presented Liu reference and, on that basis alone, should be allowed.

20

Second, contrary to Facebook's arguments, (Facebook Br. at 17-18), XACP addressed the priority of Miller at the earliest opportunity.  Facebook's earlier proposed rejection over Miller was never adopted by the Examiner, so XACP never had the opportunity to challenge its priority.  (XACP Opening Br. at 16-18).  Facebook therefore is incorrect that the issue for Miller is the same as for Yahoo.  (Facebook Br. at 17-18).  Third, the pages of Yahoo relied upon by the Board were first presented by Facebook after XACP reopened prosecution.  (compare JA348-387, submitted on 7/12/2008, with JA2887-2973, submitted three years later on 8/29/2011).  Indeed, Facebook previously admitted that the Yahoo reference that is the basis of the Board decision was also new.  (JA3262) ("But the patent owner ignores the fact that, after the [original 2011] Board decision and in response to the patent owner's claim amendments and new claims, the Requester submitted additional pages from Hill (Yahoo!) that were not before the Board …").  In addition, Facebook justified the introduction of Liu, Miller and the new portions of Yahoo into the reexamination after XACP reopened prosecution by arguing that each of the submission of each of the new references was necessitated by XACP's amended and new claims.  (JA2985 (Liu); JA2986 (Miller); JA2987 (Yahoo)).  Therefore, contrary to

21

Facebook's arguments, XACP had no prior opportunity to challenge the priority of this new reference.  (XACP Br. at 17-18).

In short, there is no evidence, much less substantial evidence, to support the Board's finding that XACP's priority arguments were untimely, which therefore should be reversed.

> **B.    The Board's Finding That Yahoo And Miller Qualify As Prior Art Is Not Supported By Substantial Evidence Because XACP Showed Entitlement To The Filing Date Of The '988 Application For The Earlier Claims.**

XACP showed that the '988 Application supports the "community" and Transmitting/Transmission claim limitations as properly construed (XACP Br. at 19-21 and JA3154-3157), and Facebook provided nothing to overcome that showing and cannot salvage the Board's unsupported findings.

Instead, Facebook claims that the construction of the "community" and Transmitting/Transmission limitations is irrelevant to XACP's claim to the benefit of the '988 Application as to the Earlier Claims.  As discussed in Section II.A above, however, the construction of the above terms would only be irrelevant if Facebook could show that the result would be the same under either the Board's construction or the proper construction discussed in Section II.B above.  Facebook has not done so, nor could it.  Facebook

simply claims the '988 Application has nothing to do with the creation of a "community," (Facebook Br. at 19), focusing on the absence of the word "community" in the '988 Application rather than whether the '988 Application actually teaches the claim limitations as properly construed. (Facebook Br. at 19-22).

Regardless of whether the '988 Application or Harvey Declaration documents use the word "community," the '988 Application clearly teaches "information and at least one application object …" that is consistent with the proper construction of "community" and the Transmitting/Transmission limitations as discussed in Section II above. (XACP Opening Brief 19-21 and JA3154-3157). Facebook has failed to overcome that showing.[3]

Accordingly, XACP is entitled to the filing date of the '988 Application with respect to the Earlier Claims, confirming that the Board's finding that Miller and Yahoo constitute prior art is erroneous.

---

[3] Facebook arguments regarding additional disclosure in U.S. Patent Application Number 09/513,844 ("the '844 application") are irrelevant to what the earlier '988 Application actually teaches. (Facebook Br. at 19-21).

**C.    The Board's Finding That Liu Qualifies As Prior Art Is Not Supported By Substantial Evidence Because XACP Demonstrated Earlier Conception And Diligence To Reduction To Practice.**

   **1.    XACP Showed That The Board's Finding That XACP Did Not Demonstrate Conception Prior To Liu's Filing Date Is Not Supported By Substantial Evidence.**

XACP showed conception prior to Liu's filing date (XACP Br. at 22-24), and Facebook has failed to refute XACP's evidence. The Harvey Declaration is properly corroborated by not only the inventor's testimony in the declaration itself, (JA3098-3108), but also by Exhibits A-M attached thereto (JA3109-3157).

Facebook seeks to make an issue over alleged unexplained inconsistencies between the Harvey Declaration and Harvey's earlier deposition. Facebook then suggests that the Board could have relied on the inconsistencies to discredit XACP's claim that conception occurred prior to May 15, 1998. (Facebook Br. at 25). However, Facebook entirely ignores that XACP already addressed these alleged inconsistencies by demonstrating that the Harvey Declaration is entirely consistent with his earlier deposition testimony. (XACP Br. at 22-23). Facebook therefore has provided no evidence or basis to undermine the credibility of the Harvey Declaration or to challenge XACP's proof of earlier conception.

24

Facebook's arguments regarding Mr. Fregly, (Facebook Br. at 26-27), are irrelevant to any consideration of which claims of the '629 Patent are supported by the earlier '988 Application and the earlier conception of those claims. Mr. Fregly was hired after the '988 Application was filed and is a named inventor of the *later-filed* '844 application. First, the '988 Application speaks for itself. (JA3580-3618). Second, Mr. Fregly was not listed as an inventor of the '988 Application and had no direct knowledge of what happened prior to his arrival.

Facebook also attempts to make an issue of the fact that XACP does not claim an earlier filing date for 46 claims. (Facebook Br. at 30-31). XACP's position is entirely consistent with the fact that Mr. Fregly is an inventor on at least one of the 46 claims that are supported by the later-filed '844 Application and is not an inventor of any of the Earlier Claims, which are all supported by the '988 Application as shown in the Harvey Declaration and supporting Exhibits. (JA3098-3157).

> **2.     XACP Showed That The Board Erred In Finding That XACP Did Not Demonstrate Diligence From Conception To Constructive Reduction To Practice.**

XACP demonstrated diligence from conception to constructive reduction to practice through the filing of the '988 Application. (XACP Br. at 25-28). Facebook has not overcome that showing. Facebook's arguments

regarding *actual* reduction to practice (Facebook Br. at 31) are irrelevant,

because diligence to *constructive* reduction to practice is all the law requires.

MPEP 715.07 (explaining three ways of showing prior invention of claimed

subject matter in accordance with 37 C.F.R. 1.131(b) including "conception

of the invention prior to the effective date of the reference coupled with due

diligence from prior to the reference date to the filing date of the application

(constructive reduction to practice)").[4]

Although Facebook argues that the Harvey Declaration does not

explain or account for alleged gaps in diligence, the only gap alleged by

Facebook is that "[t]he entire month of August 1998, for example, appears to

have been consumed by a business meeting with Hasbro and general fund-

raising efforts. (JA3106, ¶¶ 8(f)-(h).)."  (Facebook Br. at 33).  XACP

demonstrated that there were no gaps in diligence.  (XACP Br. 25-27).

Indeed, Facebook ignores the additional activity cited by XACP, which

showed continuous diligence from before the filing date of Liu to

---

[4] Facebook's further argument that constructive reduction to practice could not have occurred on September 15, 1998 because the '988 Application allegedly does not support the Earlier Claims is misplaced.  As discussed in Section III.C.1 above, XACP showed entitlement to the filing date of the '988 Application as to the Earlier Claims and therefore, also showed constructive reduction to practice of those claims as of the filing of the '988 Application.

constructive reduction to practice with the filing of the '988 Application. (XACP Br. at 26-27).

Moreover, the diligence cases cited by Facebook are inapposite. (XACP Br. at 25-26 (discussing *Scharmann*)).  In the other cases cited by Facebook, there was absolutely no activity during the relevant period.  *See In re Mulder*, 716 F.2d at 1545 ("Appellants' difficulty, as they have had to admit, is that there is no evidence whatever of record showing diligence, and therefore they cannot comply with the rule."); *Fitzgerald v. Arbib*, 268 F.2d 763, 766 (C.C.P.A. 1959) (finding lack of diligence where appellant took no steps toward reduction to practice for six months from June 3, 1954 to December 2, 1954).

There were no such unexplained gaps in diligence here.  At the very least, the Harvey Declaration established a process of weekly or biweekly revisions of the inventive concept from February to September 3, 1998 by a consultant hired expressly for that purpose in coordination with the inventors.  (JA3101).  The refined concept then was turned over to the patent lawyers for completion of a patent application, which was filed on September 15, 1998, completing the constructive reduction to practice. (JA3107).  XACP thus showed diligence for the required period from prior

to the filing of the Liu application to constructive reduction to practice of the

Earlier Claims by filing the '988 Application.

IV.   **Facebook's Brief Does Not Overcome That There Is No Substantial Evidence To Support The Board's Finding That Any Of Asserted Combinations Or Anticipation References Teach Or Suggest The Transmitting/Transmission Limitations.**

   A.   **Facebook's Arguments That The Board's Obviousness Combinations Teach The Transmitting/Transmission Limitations Rely On The Board's Improper Claim Construction And Are Not Supported By Substantial Evidence.**

XACP showed that none of the asserted combination teaches or

suggests the Transmitting/Transmission limitations.  (XACP Br. at 39-49).

Although Facebook argues that the construction of "community" is

irrelevant, (Facebook Br. at 44-46), it fails to show how the outcome would

have been the same utilizing XACP's (and the district court's) proper claim

construction.  Facebook seeks to capitalize on the Board's improper

construction of "community" and the Transmitting/Transmission limitations

in an ill-fated attempt to prop up the lack of substantial evidence supporting

the Board's obviousness determinations.  Indeed, the Board's faulty

construction taints all of Facebook's arguments that the obviousness

combinations or anticipation references teach or suggest the

Transmitting/Transmission limitations.  (*See, e.g.*, Facebook Br. at 36 ("The

Hill, Tatham, and Miller prior art references disclose a web-based system in which a 'community' is created and then transmitted in the form of a web page to another user.")).

With respect to the combination of Tatham, Herz and Liu, Facebook concedes that Tatham does not disclose transmission of at least one "application object" that includes "an executable component." (Facebook Br. at 50). Under a proper claim construction, this is an admission that Tatham does not teach the Transmitting/Transmission limitations. Facebook further argues that the "Herz reference is not pertinent to this appeal because it was relied upon only for dependent claims that are not specifically addressed in XACP's brief," (Facebook Br. at 49), even though every independent claim relied on the combination of Tatham, *Herz* and Liu. Then, inconsistent with its concession regarding Tatham, Facebook parses "the purpose for which Liu was cited" as not including the transmission of the community either, but simply the downloading of an executable component. (Facebook Br. at 51). Facebook thus fails to show that any of Tatham, Herz and Liu, alone or in combination, teach or suggest the Transmitting/Transmission limitations.

Facebook seeks to obfuscate its admissions that the Tatham, Herz and Liu combination fails to teach or suggest the Transmitting/Transmission

29

limitations by distorting the claim construction—separating the executable "application object" from the "community." (Facebook Br. at 51). It is, however, *the* application object that was selected by the registered user and which was in part the basis for creating the community that must be transmitted as part of the created community. Facebook thus provides no explanation as to why or how the combination of Tatham, Herz and Liu teaches or suggests the properly construed Transmitting/Transmission limitations.

With respect to the combination of Miller and Liu, Facebook repeats the same faulty, internally-inconsistent arguments that rely on a distorted claim construction. As with Tatham, Facebook argues that "Miller discloses 'transmitting' the community in the sense that it transmits a web page that makes the community and the selected applications available to the user," but then concedes that Miller does not disclose transmission of an "application object" that includes "an executable component." (Facebook Br. at 47). Facebook seeks to fill the critical missing limitation by relying on Liu, but only for the narrow additional requirement of transmitting an "application object" that includes an "executable component." (Facebook Br. at 49). Thus, as with the Tatham, Herz and Liu combination, Facebook

relies on an incorrect claim construction that separates the "application object" from the "community."

Additionally, although Facebook claims it "is difficult to imagine a more appropriate combination," (Facebook Br. at 48), it ignores the evidence that Miller teaches away from transmitting an application object including an executable component. (XACP Br. at 35-38). In short, Facebook's Brief does not remedy the lack of substantial evidence to support the Board's obviousness findings as to the asserted combinations.

**B.     Facebook's Arguments Regarding Anticipation By Roseman And Sarin Rely On The Board's Faulty Claim Construction, And Highlight That The Board's Anticipation Rejections Are Not Supported By Substantial Evidence.**

XACP demonstrated that the following disclosures of Roseman do not teach or suggest the Transmitting/Transmission limitations: (a) Invitation card; (b) Active icon; (c) Keys; and (d) MS Windows Icons. (XACP Br. at 49-56; *see also* JA2804-2815 and JA3161-3174). Facebook's arguments to the contrary rely on the same faulty claim construction as the obviousness arguments discussed in Section IV.A above, and cannot overcome the lack of substantial evidence supporting the Board's finding that Roseman anticipates claims 1-32.

Facebook's additional newly-minted arguments—without any citation to the record—do not remedy the lack of substantial evidence to support the Board's anticipation rejection over Roseman:

- "As in any computer system, the system in Roseman provides executable components for ***both*** a server/host computer *and* a client/user computer" (Facebook Br. at 55-56).

- "The fact that the host may have its own executable component that responds to commands from the invitation card does not change the fact that the invitation card also includes an executable component" (*Id*. at 56).

- "[T]he fact that the invitation icon is 'an icon' does not necessarily mean that it is merely a user interface with no executable component, as XACP argues" (*Id*.).

None of the above unsupported conclusory statements provide evidence, much less *substantial* evidence, to support the Board's anticipation finding. Nor does Facebook's argument regarding "difference in terminology" between the '629 Patent (JA28-JA60) and Roseman (Facebook Br. at 57) provide evidence that Roseman actually teaches the Transmitting/Transmission limitations, much less rectify the lack of substantial evidence to support the Board's anticipation finding.

Facebook's belated attempts to buttress the Board's errors should be ignored. It is the actual Board Decision that must be reviewed for substantial evidence—not an *ex post* rationale devoid of citation or support in the record. *In re Applied Materials*, 692 F.3d at 1294.

Similarly, XACP demonstrated that there is no support that the following disclosures of Sarin relied upon by the Board teach the Transmitting/Transmission limitations or "said at least one application object including an executable component": (a) Application objects; (b) Application FEs; (c) upcalls; and (d) downcalls.  (XACP Br. at 57-62; *see also* JA2818-2824 and JA3179-3185).  Here again, Facebook relies on the same *faulty claim construction* to argue otherwise.  (Facebook Br. at 57-59).

It is well-established that simply because Sarin uses the term "application object" does not mean that Sarin teaches an application object including an executable component, as required by all of the pending claims. *Applied Medical Resources Corp. v. U.S. Surgical Corp.*, 147 F.3d 1374, 1379-80 (Fed. Cir. 1998) ("The [prior art] cannot anticipate the … patent simply by possessing identically named parts, unless these parts also have the same structure or otherwise satisfy the claim limitations, and were understood to function in the same way by one skilled in the art").  Facebook relies on the use of the same "application object" terminology in Sarin as in the '629 Patent to show anticipation, (Facebook Br. at 57-59), although Sarin's application objects do not have an executable component as required by each of the pending claims.  (XACP Br. at 57-62; *see also* JA489-507).

33

In short, Facebook's Brief fails to refute that the Board's anticipation findings lack substantial evidence.

## CONCLUSION

For each of the foregoing reasons, the Court should reverse the Board's rejections of the claims of the '629 patent.

February 21, 2014                           Respectfully submitted,

/s/ David B. Walker                         Frederick A. Tecce
David B. Walker                             PANITCH SCHWARZE BELISARIO &
   *Counsel of Record*                        NADEL LLP
BARCELÓ, HARRISON & WALKER,                 One Commerce Square
   LLP                                      2005 Market Street, Suite 2200
1629 K Street, N.W., Suite 300              Philadelphia, PA 19103
Washington, D.C. 20006                          (215) 965-1398
(202) 567-6778

                                            James H. Wallace, Jr.
                                            Gregory R. Lyons
                                            Kevin P. Anderson
                                            WILEY REIN LLP
                                            1776 K Street, N.W. Washington,
                                            D.C. 20006
                                            (202) 719-7356

*Counsel for Appellant Cross Atlantic Capital Partners, Inc.*

34

## **CERTIFICATE OF SERVICE**

I certify that on February 21, 2014, the foregoing Brief for Appellant Cross Atlantic Capital Partners, Inc. was filed electronically with the Clerk of the Court for the U.S. Court of Appeals for the Federal Circuit using the CM/ECF system and served electronically by ECF on the following counsel:

Michael Graham Rhodes
Cooley LLP
44012 Eastgate Mall
San Diego, CA 92121-1909

Mark R. Weinstein
Heidi Lynn Keefe
Cooley LLP
3175 Hanover Street
Palo Alto, CA 94304-1130

/s/ David B. Walker
David B. Walker

## **<u>CERTIFICATE OF COMPLIANCE</u>**

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7) because:

_ X _      This brief contains 6,917 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and Local Rule 32(b).

____      This brief uses a monospaced typeface and contains [state the number of ] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

_ X _      this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14 point font, or

____      this brief has been prepared in a monospaced typeface using [state name and version of word processing program] with [state number of characters per inch and name of type style].

/s/ David B. Walker
David B. Walker